UNITED STATES of America, Plaintiff-Appellee,

v.

John William WORKOPICH, Defendant-Appellant.

No. 72-2676.

United States Court of Appeals, Fifth Circuit.

June 5, 1973.

and Count II charged its actual distribution on that date. Counts III and IV asserted a similar type possession and distribution of "about" 1.15 grams of heroin on June 9, 1972. On appeal he argues several grounds for reversal: first, that he had established entrapment as a matter of law; second, that the evidence was sufficient to require the district judge to charge the jury on entrapment; third, that he was merely an agent for a government informer and had no dominion or control over the drugs; and, fourth, that a charge of possession with intent to distribute merges into a charge of distribution, and is therefore multiplicitous. We hold that the defendant did not establish entrapment as a matter of law but that the evidence created a question of fact as to entrapment. The defendant was therefore entitled to a charge explaining entrapment to the jury and he was entitled to have the jury decide the issue. Due process is not satisfied with less. We reverse and remand for a new trial.

J. V. Eskenazi, Federal Public Defender (court-appointed but *not* under *Act*), Theodore J. Sakowitz, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., J. Daniel Ennis, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and WISDOM and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

John William Workopich was indicted and convicted on four counts of violating the Controlled Substances Law, 21 U.S.C. § 841.[1] Court I charged that he possessed "about" 1 gram of heroin on June 2, 1972, with the intent to distribute it,

I.

Workopich was a twenty year old heroin addict who lived with another addict in the hippie enclave in Coconut Grove, a section of Miami, Florida. At the time of his arrest he had been a user of heroin for seven years, an addict for four years.

On June 2, 1972, special agents Walde and Dodge of the Bureau of Narcotics and Dangerous Drugs, and detectives D'Ambrosia and Wrightson, two local policemen, arrived at 2 p. m. by automobile in Coconut Grove. Each was dressed to pass unnoticed in a hippie area. By arrangement they met Guyman, a government informer. They observed Workopich "milling" around near Lum's Restaurant "doing nothing". Guyman, who had met the defendant three weeks earlier, spoke with Worko-

---

[1] 21 U.S.C. § 841(a)(1) reads as follows: "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance;"

pich intermittently during the afternoon. At 4 p. m. Guyman asked Workopich to sell him some drugs for friends who were addicts. Workopich replied that he did not have any heroin and did not sell it but that he knew someone who did and that person was scheduled to arrive in twenty minutes and perhaps the purchase could be made from him.

Shortly afterwards, the informer introduced agent Walde to the defendant. The three were together when Workopich's supplier arrived. The defendant approached the supplier and asked if he had any drugs he could sell to Guyman and agent Walde. The supplier told Workopich to ask them how much they wanted. The defendant then asked the informer, standing only ten paces away, how much he wanted. The reply was thirty dollars worth and agent Walde gave the thirty dollars to Workopich. The defendant and the informer then walked the ten paces back to the supplier and made the transaction. Workopich kept no money nor any drugs. He immediately returned and delivered the drugs to the agent. All of these acts took place in close proximity to and in clear vision of the agents, except for a short moment when Workopich stepped behind Lum's with the informer and the supplier to make the exchange.

One week later informer Guyman again approached Workopich at Lum's. Guyman told the defendant that his two friends were suffering withdrawal symptoms and needed to purchase heroin quickly. Workopich then entered an automobile with Guyman and the two agents and drove down the street until he spotted his supplier. The agents gave him thirty dollars of recorded government money with which to buy two bags of heroin. Workopich stepped out of the car, purchased two bags of heroin, and handed them to the agents.[2] In this transaction the defendant, then suffering the onset of withdrawal symptoms, also purchased a bag for himself on credit. He told the agents this heroin was for his own use and as soon as possible he found a quiet place where he injected the heroin into his arm.

Six days later he was arrested.

At the trial the court refused to instruct the jury on the defense of entrapment. The jury found the defendant guilty on all four counts and he was sentenced under 18 U.S.C. § 4253(a) to treatment for an indeterminate period not to exceed ten years. Prior to this case the defendant had no history of dealing in drugs.

## II.

The defendant argues that because government agents solicited his criminal activity and because they provided him with currency without which the purchase could not have been made, that entrapment had been proved as a matter of law under this Court's decision in United States v. Bueno, 5 Cir. 1971, 447 F.2d 903.

In *Bueno* the defendant was induced by a government informer to sell heroin to a government agent. The informer, compensated by the government, had imported the heroin into the United States from Mexico. Because the government failed to produce the informer at the trial, the defendant's testimony of inducement was uncontested. In granting a new trial, the court concluded that unless the government could produce contradictory testimony on remand, the defendant would be entitled to acquittal as a matter of law.

In the present case the government did not call the informer as a witness to challenge the testimony of the defendant. But, unlike *Bueno* where the government supplied contraband, the government here supplied a commodity legal in itself, United States currency. Furthermore, whereas in *Bueno* the defendant was merely the conduit between two

---

2. The contents of the two bags transferred on June 2 weighed .27 grams of which .03 grams was heroin. The packets on June 9 weighed .52 grams of which .03 grams was heroin.

government employees, here the defendant actually arranged the purchase from one illegally dealing in heroin.

Subsequent to the briefs and argument in this case, the Supreme Court issued its opinion in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L. Ed.2d 366, 1973. There a government agent approached the defendant and offered to supply him with a chemical essential to the illegal manufacture of amphetamines. This ingredient was legal in itself to possess, in contrast to the contraband supplied in *Bueno*.

In *Russell* the Court noted the decision in *Bueno* but neither expressly approved or disapproved of its holding. The Court did not reach a review of the principle in *Bueno* because it concluded that even if such a principle were adopted the defendants there would not come within its scope. In fact the defendants had previously acquired the ingredient for the production of amphetamines before the time they were approached by the government agent. Though the Supreme Court noted that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction," the Court concluded that this was not the day.

In holding that there was not an "intolerable degree of governmental participation" in the government solicitation in *Russell*,[3] the Court reaffirmed the entrapment doctrines enunciated in Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848. Noting that "entrapment is a relatively

limited defense" the Court emphasized that the focus of the entrapment defense is upon the predisposition of the defendant. "[T]he fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution." *Sorrells*, 287 U.S. at 441, 53 S.Ct. at 212; *Sherman*, 356 U.S. at 372, 78 S.Ct. 819.[4] Both in *Sorrells* and in *Sherman* the government activity went beyond merely affording an opportunity for crime. In *Sorrells* a jury issue was created and in *Sherman* entrapment was established as a matter of law because of the repeated entreaties to the defendants, coupled with persuasive argument of an informant to enter into criminal activity. In *Sherman* the informant was met with "refusal," then with "evasiveness," then with "hesitancy" before eventually cooperating. Furthermore, these requests were "predicated on [the agent's] suffering." *Sherman,* 356 U.S. at 371, 373, 78 S.Ct. 819. Similarly in *Sorrells*, there were multiple requests before the defendant complied and provided the agent with illegal liquor. This "repeated and persistent solicitation in which [the agent] succeeded by taking advantage of the sentiment aroused by the reminiscences of their experiences as companions in arms in the World War" constituted an issue of entrapment for the jury to determine. *Sorrells*, 287 U.S. at 441, 53 S.Ct. 210. See Henderson v. United States, 5 Cir. 1958, 261 F.2d 909.

Here the defendant testified that the informer approached him twice prior to June 2 and asked to purchase heroin; he was refused. The defendant testified that on June 2 the informant stated the heroin was for friends who were suffering from withdrawal symptoms. The

---

3. In contrast to the present case, the district court in *Russell* charged the jury on the entrapment issue. The issue on appeal was whether an absolute defense was available because of the creative activity of the government, regardless of predisposition of the defendant to commit the crime.

4. Note Section 531 of the President's version of the Revised Criminal Code, 13 Cr.L.Rep. 3001, April 4, 1973: "[T]he provision of a facility or an opportunity for commission of an offense . . . or mere solicitation which would not induce an ordinary law-abiding person to commit an offense, does not in itself constitute unlawful entrapment."

informer did not take the stand to contradict this testimony. When counsel for the defendant asked agent Walde if he had told the defendant why he needed the drugs, the trial judge sustained an objection by the government. He concluded that the question was "totally irrelevant to the offenses charged" and "it wouldn't be entrapment." When the defense questioned the defendant as to what agent Walde had told him, the court overruled a government objection. The court found that "the evidence in this case, giving the defendant the benefit of it, is that he thought these people were users and were about to be subjected to withdrawals pains [sic] and that he out of a desire to help them, made the purchase. . . ."

■ In *Sorrells* the Court concluded that a jury issue had been created, but in *Sherman* the Court concluded that entrapment was established as a matter of law. The Court noted in *Sherman* that in finding entrapment as a matter of law it was "not choosing between conflicting witnesses, nor judging credibility. Aside from recalling [the informer] who was the Government's witness, the defense called no witnesses. We reach our conclusion from the undisputed testimony of the prosecution's witnesses." *Sherman*, 356 U.S. at 373, 78 S.Ct. at 821. In a companion case of the same day the Court dealt with an alignment of testimony more similar to our present facts, Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859. The defendant there was introduced to a government agent by a government informer. The defendant testified that the informer had lured him into crime by promises of an easy income, but the informer himself did not testify. The Court rejected the argument of the defendant that his uncontradicted testimony of conversations with the informer could establish entrapment as a matter of law. "While the petitioner presented enough evidence for the jury

to consider, they were entitled to disbelieve him in regard to [the informer] and so to find for the Government on the issue of guilt. Therefore the trial court properly submitted the case to the jury." *Masciale*, 356 U.S. at 388, 78 S.Ct. at 829. Thus, when the undisputed testimony of a defendant is the sole basis for an entrapment defense, entrapment is not established as a matter of law but rather is an issue for the jury to decide. Accord, United States v. Burgess, 5 Cir. 1970, 433 F.2d 987. *Cf.* United States v. Bueno, 5 Cir. 1971, 447 F.2d 903, where, when the government supplied contraband to the defendant, his uncontradicted testimony established entrapment as a matter of law.

Here, the defendant's uncontradicted testimony is that he was approached several times before he capitulated. He further testified that he was told that the drugs were for addicts, like himself, who were suffering the pain of withdrawal. On the other hand, the relationship of the defendant and the informant was ephemeral and transitory. Though he had no drugs for sale, the defendant had no resistance in assisting a purchase through his connection. The defendant was compliant but not eager.

■■ In these circumstances entrapment was not established as a matter of law, but was a question for the jury to resolve. The burden of proving entrapment is upon the defendant and the burden of proving predisposition is upon the government. Pierce v. United States, 5 Cir. 1969, 414 F.2d 163. "If there is any evidence in the record that, if believed by the jury would show that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it, then, as in all other cases involving questions of guilt or innocence, the jury must be permitted to resolve the matter." *Pierce*, 414 F.2d at 168.[5] Paralleling the result in *Sorrells*,

5. In restating the opinion of the majority in *Russell*, Mr. Justice Stewart in a dissenting opinion noted: "And in the absence of a conclusive showing one way

we hold that the defendant was entitled to have his defensive theory of the case explained to the jury by an appropriate charge on entrapment. We remand for a new trial.

### III.

■ The defendant also contends that his activity as an intermediary between a government informant and his connection was not a "distribution" under 21 U.S.C. § 841(a)(1). The definitional section, 21 U.S.C. § 802(11) reads: "The term 'distribute' means to deliver . . . a controlled substance." That definitional section at 21 U.S.C. § 802(8) states: "The term 'deliver' or 'delivery' means the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship." [6] Thus a "sale" is not required and the issue of agency is irrelevant. *Cf.* Adams v. United States, 5 Cir. 1955, 220 F.2d 297. The acts of the defendant here clearly fall within the plain meaning of those words.

### IV.

■ Finally, the appellant contends that the convictions of possession with intent to distribute and of distribution are multiplicitous. The defendant was sentenced under the provisions of 18 U. S.C. § 4253 to treatment for a period not to exceed ten years. The court could have imposed this sentence for any of the four counts of which the defendant was convicted. Thus, under the concurrent sentence doctrine we need not now reach the issue of multiplicity. United States v. Vasquez, 2 Cir. 1972, 468 F.2d 565. Indeed, the sentence received is a shorter period than the fifteen years

or the other, the question of the defendant's 'predisposition' to the crime is a question of fact for the jury. The Court today adheres to this approach."

6. These definitions were promulgated by the Comprehensive Drug Abuse Prevention and Control Act of 1970, effective

confinement which could have been imposed for a single count under 18 U.S.C. § 841(b)(1)(A).

Reversed and remanded for proceedings not inconsistent with this opinion.

October 27, 1970; 1970 U.S.Code Cong. & Admin.News p. 4566. That act, in describing unlawful acts, makes illegal the broader inclusive acts of "distribution" or "dispensing", and does not use the more restrictive term "sell". *Cf.* Palmer v. United States, 5 Cir. 1964, 340 F.2d 48.