**UNITED STATES of America,**
**Appellee,**

v.

**Gerald JETT, Defendant, Appellant.**

**No. 73–1281.**

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1974.

Decided Feb. 8, 1974.

Michael A. Paris, Boston, Mass., with whom Leppo & Paris, was on brief, for defendant-appellant.

Lawrence P. Cohen, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Gerald Jett was convicted as a result of jury verdicts on three counts charging disposition of cocaine in violation of 21 U.S.C. § 841(a)(1). His chief claim on this appeal is that, for a number of reasons, he should have received directed verdicts of acquittal. We affirm.

The principal government witness was narcotics special agent O'Brien. He testified to a meeting with Jett in an apartment in Boston. Also present was Loren Jacobs, a government informant who had brought Jett to O'Brien's attention. Jett produced a plastic bag which he announced contained cocaine for which he had paid $1000 an ounce. He sifted out an ounce and gave it to O'Brien in exchange for $1200. It was, in fact, cocaine. Five days later O'Brien met Jett in a motel in Springfield. Jacobs was not present. Again Jett produced a plastic bag containing a white powder. This time he stated that it was cocaine which "his people in Boston" had obtained from Peru. The bag contained four ounces of cocaine, and O'Brien paid Jett $4300 therefor. Jett then asked O'Brien if he would be willing to purchase a pound, saying that his "man . . . would trust him [Jett] to front the cocaine." O'Brien indicated willingness, and two days later telephoned Jett, who told him that "he was with his people and that he could do a pound of cocaine that evening." An appointment was arranged, again at the Springfield motel, and when Jett there produced bags containing a pound and four ounces of cocaine he was arrested. Again, Jacobs was not present. At the trial, although in the courtroom and available to both parties, she was not called.

*Entrapment—Inducement by persuasion*

Jett took the stand. He testified that prior to meeting Jacobs he knew about narcotics, but had never dealt in them; that he made these sales to O'Brien simply on behalf of Jacobs, for a small payment, with her supplying the cocaine, and after her repeatedly begging him to do so for her because of an alleged disability from doing so herself. Citing Kadis v. United States, 1 Cir., 1967, 373 F.2d 370, Jett asserts that, he having introduced evidence of inducement,[1] the burden of proving predisposition was on

---

1. Under what circumstances inducement by an informer does not bind the government is    a question we do not reach. We assume it would here.

the government, and that it failed to meet its burden. Jett has, and could have, no criticism of the court's extensive charge on predisposition; his claim is that the government's evidence was insufficient to establish it.

■ This claim must fail for two reasons. In the first place, while it is true that we stated in *Kadis* that introduction of evidence of inducement placed the burden of showing defendant's predisposition upon the government, such a burden of persuasion is a matter for the jury. We flagged the fact that this evidence might be disbelieved by citing McDonald v. United States, 1962, 114 U.S.App.D.C. 120, 312 F.2d 847, 849 (whether uncontroverted evidence introduced by defendant on issue upon which he has the burden must be believed depends upon its "weight and credibility.") The general rule is that where the law attaches some inferential consequence to the introduction of evidence, this means credited evidence—if the jury disbelieves it, it becomes, in effect, no evidence. Thus where the law establishes a presumption in the absence of evidence and a party introduces evidence, it is proper to charge the jury that if it disbelieves the evidence it must adopt the presumption. Brown v. Henderson, 1934, 285 Mass. 192, 189 N.

E. 41.[2] So in Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L. Ed.2d 859, where the defendant testified that he was induced by the informer, and the informer did not testify, the Court held that, even though defendant's evidence on inducement was uncontradicted, the jury was entitled to disbelieve it and conclude he was not induced. Hence, even though the government there offered no evidence of predisposition prior to his contact with the informer, *see* United States v. Masciale, 2 Cir., 1956, 236 F.2d 601, the defendant was not entitled to a directed acquittal.[3]

■■ Whatever may be the circumstances under which a defendant's uncontradicted evidence has to be believed, we need not here decide.[4] In the present case defendant's testimony was far from sufficient to be accepted as matter of law. Since the government's evidence showed no inducement beyond a mere solicitation or opportunity, the government could have offered no evidence as to predisposition, and taken its chances that the jury would not accept defendant's testimony. If the jury rejected that testimony the government would have no burden. In point of fact, we find substantial evidence warranting a finding of predisposition. Defendant, inter alia, could be seen as much too at

2. The charge which the court approved in Brown v. Henderson, at 194, 189 N.E. at 42, read as follows:
"[I]f there is no evidence as to the due care in this case of Mr. Brown, then the presumption controls. When evidence is introduced then you are to consider the evidence. If you believe the evidence the presumption disappears; but just because somebody has said something and you do not believe a word of that evidence the presumption would control."

3. We cannot accept defendant's case of United States v. Bueno, 5 Cir., 1971, 447 F.2d 903. We believe the court fell short in its analysis, and quite apparently was unaware of Masciale v. United States, ante.

4. In Rosenberg v. Baum, 10 Cir., 1946, 153 F.2d 10, at 13–14 the court said,
"Where unimpeached witnesses testify distinctly and positively to a fact and are not contradicted, their testimony should under

ordinary circumstances be credited and have the effect of overcoming presumptions. But that rule is subject to qualifications. There may be such inherent unreasonableness or improbability in the statements made by the witnesses as to deprive them of credit, however positively made. Though unimpeached, the witnesses may manifest such an interest in the question as to dilute their credibility. Their attitude may completely discredit the testimony. Physical facts may dispute it. And other circumstances may render it unworthy of belief. In such case the court or jury is not required blindly to adopt the testimony. Instead, the court or jury may in the exercise of sound judgment decline to give it decisive credence, though it is not contradicted by direct adverse testimony."
*See, also,* Andrew Jergens Co. v. Conner, 6 Cir., 1942, 125 F.2d 686, 689.

ease when dealing with O'Brien, and too frequently willing, on his own testimony, to accept the informant's alleged reasons, which we can only regard as increasingly implausible, for allegedly needing him as a facilitator for sales really by her.

*Entrapment, etc.—Informant as supplier.*

■ Defendant claims that he was entitled to an acquittal because Jacobs was the supplier of the cocaine. Again, however, all of the evidence supporting that claim came from him. There was, in addition, direct contradiction. O'Brien testified, ante, to statements by defendant of sources which, although not identified, clearly were not Jacobs. Furthermore, Jett's testimony that Jacobs brought the cocaine to the Springfield motel on the occasion of the last—incompleted—one pound sale, was contradicted by evidence that government agents had maintained a surveillance, and that Jacobs could not have done this. We add that we regard it as inherently incredible that Jacobs, who concededly was not present at the sale, need have, or would, even if she had access to such a large amount, have trusted Jett with a pound and four ounces of cocaine, valued at $1000 an ounce, simply to set him up. There is no suggestion that the government connived, or even knew of any such alleged conduct on Jacobs' part, let alone financed or supplied her.

■ On the record defendant contends that he was at least entitled to a charge that if the jury believed him that Jacobs supplied the cocaine (without any condition that they believed the government knew about it), it was either entrapment as matter of law, for which he cites United States v. Bueno, 5 Cir., 1971, 447 F.2d 903, or a sale by the government to itself, and so not within the act. We do not accept *Bueno.* So long as the jury found predisposition, it would not be intolerable entrapment for an informer to supply the drug unbeknownst to the government. *See* United

States v. Russell, 1973, 411 U.S. 423, 435–436, 93 S.Ct. 1637, 36 L.Ed.2d 366.

*Entrapment—Contingent fee*

■ Defendant contends that he was entitled to an acquittal because the informant was paid on a contingent fee basis, citing Williamson v. United States, 5 Cir., 1962, 311 F.2d 441. The evidence does not support the claim. It is true, as must often be the case, that the informant was paid on the basis of the value of her services. This is not an impermissible contingent fee within the meaning of *Williamson.* Heard v. United States, 5 Cir., 1969, 414 F.2d 884, 886; United States v. Crim, 4 Cir., 1965, 340 F.2d 989; *See* United States v. Durham, 5 Cir., 1969, 413 F.2d 1003, cert. denied, 396 U.S. 839, 90 S.Ct. 100, 24 L.Ed.2d 89.

*The Indictment—Hearsay*

■ Because of the unavailability of government agent O'Brien when the grand jury was convening, the United States Attorney had another agent read to the jury from O'Brien's notes as a substitute for his direct testimony. The circumstances, and its consequent hearsay character, were fully explained to the grand jury. Nevertheless, defendant attacks the indictment. An indictment may be based upon hearsay, Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397, and we find in the circumstances of this case no reason to make an exception. Defendant's case of United States v. Estepa, 2 Cir., 1972, 471 F.2d 1132 is totally out of point. Every matter on which the court there relied was absent in the case at bar.

■ Without deciding whether we would agree with *Estepa* on its facts, we do agree that it is normally preferable for a grand jury to have something other than hearsay and that we would dislike seeing a practice of hearsay only. By so saying, however, we do not suggest that a defendant is entitled as of right to demand grand jury minutes to see if he can discover whether hearsay,

or only hearsay, was used. As the Court only recently observed, "An indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence," United States v. Calandra, 1974, 414 U.S. 338, at 345, 94 S.Ct. 613, at p. 618, 38 L.Ed.2d 561. We add that we regard with little enthusiasm those cases which suggest that a defendant's now enlarged right of inspection places some kind of a burden on the government to present particular witnesses to the grand jury.

 Defendant asserts that he should have been given the grand jury minutes as Jencks Act, 18 U.S.C. § 3500, material, alleging that the witness before the grand jury was merely a conduit for O'Brien's testimony and that the witness's testimony should be treated as O'Brien's testimony. Defendant was given O'Brien's actual notes. Beyond that there is no logic to this complaint. Defendant makes a number of other assertions, all of which we have reviewed, but none of which require discussion.

Affirmed.