UNITED STATES of America,
Plaintiff-Appellee,

v.

Angel Luis OQUENDO, Defendant-
Appellant.

No. 73-1941.

United States Court of Appeals,
Fifth Circuit.

Feb. 25, 1974.

Frank Herrera, Jr., San Ántonio, Tex. (court-appointed), for defendant-appellant.

William S. Sessions, U. S. Atty., John Pinckney, III, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and RONEY and GEE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Appellant was convicted on three separate counts of distribution of heroin in violation of 21 U.S.C.A. § 841(a). Since we find that a *Blue*-type charge was given to the jury, we must reverse.

At trial, Agent Losoya, a San Antonio Police Officer (Agent) working as an undercover agent for the federal Drug Abuse Law Enforcement Agency testified that on August 29, 1972 he drove to the China Royal Cafe in San Antonio, Texas with an informer. When they parked in front of the cafe, Appellant approached the car and asked them if they were trying to "score". The Agent replied in the affirmative. A sale of two grams of heroin was arranged and Appellant returned shortly with the heroin which he transferred to the officer.

The Agent further testified· that on the following day, he and the informer drove to the Carosel Lounge. The informer entered the lounge and returned accompanied by Appellant. The Agent informed Appellant that he was again interested in purchasing heroin. The Agent and Appellant went into the Carosel where they met Jose Torres. The Agent stated that he needed five grams of heroin. Torres said that he could provide only two. The three went into the restroom. Torres gave the Agent the heroin and instructed him to pay Appellant.[1] The Agent and Appellant then left the Carosel. Appellant left the Agent for a short period of time and returned with the other three grams of heroin which he transferred to the Agent.

Appellant took the stand and admitted that the transactions occurred essentially as the Agent had testified. However, he alleged that on the morning of August 29, the informer who had later introduced him to the Agent approached Appellant and asked him if he would be willing to sell drugs for him. Appellant, who claims to have been a heroin addict at the time, agreed. The informer then gave Appellant 15 grams of heroin, instructed him to sell it at $40.00 per gram, and told him not to tell anyone that the heroin belonged to the informer. Appellant testified that he later gave his friend Torres two grams of heroin to sell for him.

Appellant asserted that prior to his encounter with the informer on the morning of August 29, he had no heroin and that all of the heroin sold to the Agent in the three transactions had been obtained from the informer.

The prosecution then produced the informer who testified that he had been casually acquainted with Appellant prior to introducing him to the Agent but emphatically denied having ever given him any heroin and denied having even seen him on the morning of the 29th or within a five to six day period prior to that date.

■■ Appellant essentially admitted all of the elements of the crime charged resting his defense on our holding in United States v. Bueno, 5 Cir., 1971, 447 F.2d 903, that entrapment is established as a matter of·law where a defendant is charged with possessing contraband or distributing it to a government agent if the contraband in question was supplied to the defendant by a government agent including a paid informer.[2] We held in

---

1. Torres is currently a fugitive from justice.

2. It is immaterial whether the purchasing agent or any other government agent knew that the informer had supplied the defendant with the contraband. As we observed in *Bueno*:

"There is no evidence from which to infer that the purchasing Agent knew of this activity of the Informer, who was employed

*Bueno* that when a defendant testifies that he obtained the contraband from an informer, the government must produce the informer to contradict the defendant's allegations in order to take the case to the jury. If the informer so testifies, then the jury must find beyond a reasonable doubt that the defendant did not obtain the contraband in question from the informer.

At the outset, we must determine whether *Bueno* is still viable in light of United States v. Russell, 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366. We conclude that it is.

In *Russell* the Supreme Court held that the fact that a government agent who had infiltrated a drug manufacturing ring had provided the defendants with an essential ingredient for manufacturing methamphetamine did not constitute entrapment as a matter of law where the defendants were charged with unlawfully manufacturing, selling and delivering methamphetamine. Rather, the question of entrapment was for the jury under the Sherman[3]-Sorrells[4] test. The Court emphasized that the ingredient provided by the government was "by itself a harmless substance", difficult but by no means impossible to obtain and the possession of which was legal. 411 U.S. at 431–432, 93 S.Ct. 1642–1643, 36 L.Ed.2d at 373.

While observing that the Court of Appeals for the Ninth Circuit had relied on *Bueno*[5] in finding entrapment as a matter of law, the Supreme Court implicitly acknowledged that the facts in *Russell* did not fall within the *Bueno* rationale. 411 U.S. at 431, 93 S.Ct. at 1642, 36 L. Ed.2d at 373. Unlike *Russell* where the government provided a legal, harmless, obtainable substance, the government informer in *Bueno* provided the defendant with heroin—the contraband itself the possession or distribution of which constitutes the very substance of the crime. This clearly and meaningfully distinguishes *Bueno* from *Russell*.[6]

We pointed out in *Bueno* that:

"The story takes on *the element of the government buying heroin from itself, through an intermediary, the defendant, and then charging him with the crime.* This greatly exceeds the bounds of reason stated by this court in Williamson v. United States, 311 F.2d 441 (5th Cir. 1962).

---

only on a temporary basis. However, we believe that the facts must be viewed in their entirety for the purpose of considering their effect on this prosecution. Both the Agent and the Informer must be treated as acting in concert, each with full knowledge of the actions of the other. Sherman v. United States, 356 U.S. 369, 373–375, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958)."
447 F.2d at 905.

3. Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848.

4. Sorrells v. United States, 1932, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413.

5. "This new defense was held to rest on either of two alternative theories. One theory is based on two lower court decisions which have found entrapment, regardless of predisposition, whenever the government supplies contraband to the defendants. United States v. Bueno, 447 F.2d 903 (CA5 1971) ; United States v. Chisum, 312 F.Supp. 1307 (CD Cal.1970)."
411 U.S. at 427–428, 93 S.Ct. 1640–1641, 36 L.Ed.2d 371.

6. In United States v. Workopich, 5 Cir., 1973, 479 F.2d 1142 we observed that the facts of *Bueno* were distinguishable from the facts before the Court as well as from *Russell*.
"But, unlike *Bueno* where the government supplied contraband, the government here supplied a commodity legal in itself, United States currency. Furthermore, whereas in *Bueno* the defendant was merely the conduit between two government employees, here the defendant actually arranged the purchase from one illegally dealing in heroin.
Subsequent to the briefs and argument in this case, the Supreme Court issued its opinion in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366, 1973. There a government agent approached the defendant and offered to supply him with a chemical essential to the illegal manufacture of amphetamines. This ingredient was legal in itself to possess, in contrast to the contraband supplied in *Bueno*."
479 F.2d at 1144.

\* \* \* \* \* \*

The facts of this case clearly fit within the framework of the law in this field. If Defendant is to be believed, the sales of heroin were made through *the creative activity* of the government. The Defendant would not have had the heroin to sell if it had not been purchased by the Informer. In fact, this particular heroin would apparently not have been in the United States at all, if it had not been smuggled in by the Informer."

447 F.2d at 905–906 (emphasis added).

We recognize that in *Russell* the Supreme Court emphasized that entrapment is a limited defense as well as affirming the continuing vitality of the predisposition/inducement test of *Sherman* and *Sorrells*. But despite the fact that the defendant's predisposition to commit the crime is not a significant factor under *Bueno*, we do not feel that *Bueno* is inconsistent with *Russell*.[7]

█ We wish to emphasize that the question of whether the *Bueno* defense has been established is for the jury as long as the government has come forward with sufficient evidence contravening the defendant's allegations.

█ Since Appellant testified that he had obtained the heroin from the government informer and the informer flatly denied these allegations, this case was properly within the *Bueno* rationale. Its application depended on the jury resolution of which was true, the story of the appellant or the story of the informer.

The Court charged the jury on the presumption of innocence, the government's burden of proof beyond a reasonable doubt, and the fact that the jury is not bound by the Court's comments on the evidence. The Court also propounded an instruction on the standard *Sherman-Sorrells* entrapment defense.

Then in the process of instructing the jury on the proper resolution of conflicting testimony, the Court noted:

*"It is just a question of who you believe.* And the Defendant has charged me in effect, and the Government as well asked me to charge you in effect, *that if you believe the story of the Defendant here, Oquendo, you should acquit him. If you don't believe him, and believe the story of Grundy, that he merely was a conduit through which the officer made the acquaintance, that this man was a known pusher and so forth. Whatever he said you will remember, I won't. Then there is no doubt that the man ought to be convicted.* (Emphasis added).

█ The Court then attempted to instruct the jury on the Bueno defense.[8]

In explicit reliance on the concurring opinions in *Sorrells* and *Sherman* the Court purported to exercise its supervisory power to bar a prosecution due to an excessive degree of police participation in the criminal activity.

Since we can only speculate on the significance of the Court's cryptic order in *McGrath*, our determination as to the continuing viability of *Bueno* must ultimately rest on a careful consideration of *Russell*. As we have pointed out above, the holding of *Russell* does not, in our view, undercut the vitality of *Bueno*.

---

7. Following *Russell*, the Supreme Court vacated the Seventh Circuit's decision in United States v. McGrath, 7 Cir., 1972, 468 F.2d 1027, vacated and remanded, 412 U.S. 936, 93 S.Ct. 2769, 37 L.Ed.2d 395 for further consideration in the light of *Russell*. In *McGrath* the Seventh Circuit had reversed a conviction for possession of counterfeit currency and conspiracy to produce and pass counterfeit obligations where the Government had taken charge of and supervised a counterfeiting operation after the defendant had initially purchased counterfeiting materials and had attempted to locate a willing printer.

The Seventh Circuit relied, at least partially, on the rationale that it was "repugnant to the most elemental notions of justice to permit law enforcement personnel to manufacture counterfeit bills, deliver them and then arrest the recipient for possession of contraband." 468 F.2d at 1030.

8. We point out that where the facts may require submission of a charge on the standard entrapment defense as well as a *Bueno* instruction, the Court should be careful to indicate that these are separate concepts in order to avoid misleading the jury into believing

"But I am charging you for the purposes of this case, and I am telling you that you must take the law as it is a legal defense in this particular case. It sure would be dirty pool to have an informer hand a man some Heroin, tell him to sell it for me, and then go back and get it and so forth, and then turn him over to the Government. And I don't think anyone should be convicted on that sort of evidence.

But if on the other hand you feel that it is a contrived defense, and it doesn't meet the possibilities or probabilities of the situation, *and you feel that Grundy and the officer were telling the truth, then you shouldn't have the slightest hesitation to find the Defendant guilty.*

I have given you that instruction of law, *if you find it happened as Oquendo said, not guilty. If you find it as the officer said, guilty.*" (Emphasis added).

After having retired to deliberate, the jury requested a written instruction on entrapment. The Court again charged the jury on the standard entrapment defense [9] and then referred to the *Bueno* defense in the following terms:

"I told you members of the jury that in my opinion, and I think that it must rest in yours too, but you are the judge of the facts, the gist of the situation here is did Grundy plant this narcotics on this man and then go to the Government and say 'I know this man has it', and they bought back the same narcotics. *If he did, you ought to acquit him.*

*If he didn't*, and this is the story made up out of the whole thought by a clever defendant, consistent with the Government's other story, *then he is not entitled to it, and you should just as quickly convict him.*

*It is as simple as that, members of the jury, it is a yes or no answer. Do you believe the defendant, who has everything at stake, or do you believe the informer, who has no charges pending.*" (Emphasis added).

The District Court committed reversible error by repeatedly casting the jury's ultimate determination of whether to convict or acquit in terms of a mere credibility choice between the informer and appellant.

We sympathize with the District Court since we realize that, as we phrased it above, the jury's decision in this case would probably depend upon whether it chose to credit the testimony of appellant and discredit the conflicting testimony of the informer or vice versa. Nevertheless, as we have many times held in the use of the *Blue* charge, there is too great a risk to fundamental values to warrant using this simplistic method.

Over the past four years we have consistently reversed whenever the trial court has given a *Blue* [10] charge to the

that the *Bueno* defense is unavailable where the jury finds that the defendant manifested a sufficient predisposition to commit the crime even though this would prove fatal to the standard entrapment defense.

9. In reinstructing the jury on entrapment, the Court attempted to draw a distinction between lawful and unlawful entrapment. We have recognized that such a distinction is "confusing and perhaps erroneous." United States v. Groessel, 5 Cir., 1971, 440 F.2d 602, cert. denied, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713. We need not determine in this case whether such an instruction constitutes reversible error. United States v. Sadler, 5 Cir., 1974, 488 F.2d 434.

10. In United States v. Womack, 5 Cir., 1972, 454 F.2d 1337, 1344, we disapproved the charge which we had originally sanctioned in United States v. Blue, 5 Cir., 1970, 430 F.2d 1286 the substance of which was:

"I will state to you in passing, if you accept the testimony of these witnesses, then there is sufficient evidence for you to find each of these Defendants guilty under this count but their credibility is a matter for you to pass on. If you do not accept that evidence as credible or believable, then that is for you to decide because you pass on that. I merely give you these instructions. If you do not accept that testimony offered by the Government, then, of course, you would find the Defendants not guilty. If you believe the evidence of the Government or these witnesses here, there is sufficient evidence for you to find these Defendants guilty."

jury. United States v. Williams, 5 Cir., 1973, 473 F.2d 507; United States v. White, 5 Cir., 1972, 459 F.2d 990; United States v. Wood, 5 Cir., 1972, 458 F.2d 1351; United States v. Lowry, 5 Cir., 1972, 456 F.2d 341; United States v. Womack, 5 Cir., 1972, 454 F.2d 1337; United States v. Dillon, 5 Cir., 1971, 446 F.2d 598; United States v. Dopf, 5 Cir., 1970, 434 F.2d 205; United States v. Garza, 5 Cir., 1970, 426 F.2d 949.

We summed it all up in United States v. Williams, *supra*:

> "While we agree with the government that the charge given here, like the charge actually given in the *Blue* case, is perhaps not as egregious as those given in the previously cited cases, that point of agreement is not the determining factor in this appeal. In *Womack* this court held that because the *Blue* charge, standing alone, could be interpreted by a jury as a directed verdict of guilty and because of its consequent potential for prejudice, it was necessary to proscribe any further use of the charge. This decision was an implicit recognition of the futility of a semantic comparison between the *Blue* charge and subsequent *Blue*-type charges as a means of determining whether a particular charge was prejudicial error. The underlying rationale of the decision in *Womack*, as well as in *Garza, Dopf, Dillon* and *Lowry*, is that when a court's charge *could reasonably be construed as—or has the practical effect of—*directing a verdict of guilty, the charge exceeds the bounds of fair and impartial comment and is, therefore, error." (Emphasis added).

473 F.2d at 511–512.

This is consistent with the policy to which we are deeply committed that in a criminal case:

> "[N]o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truths. In our federal system, the Trial Court may never instruct a verdict either in whole or in part."

Roe v. United States, 5 Cir., 1961, 287 F.2d 435, 440. Thus in spite of Appellant's admission that he willingly distributed the heroin, the District Court infringed on the jury's exclusive domain as the finder of fact by instructing them that if they believed the informer and disbelieved the Appellant on the issue of entrapment they must convict.

The charge given in this case is substantially similar to and carries all of the potential for prejudice of the discredited *Blue* charge. Thus once again, we must reverse.[11]

Reversed.

GEE, Circuit Judge (specially concurring):

I agree that the judgment must be reversed because a *Blue* charge was given, one which invited the jury to treat the matter of proof as a fair fight between the United States and Oquendo rather than as one weighted in his favor by the reasonable doubt rule. This is so even if Oquendo's only real defense, the *Bueno* doctrine, was disapproved by the Supreme Court in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L. Ed.2d 366 (1973). His not guilty plea placed all in issue, and the *Blue* charge given may well have infected the entire spectrum of the jury's deliberations.

Regretfully, I cannot agree that *Bueno* remains good law. As the majority makes plain,[1] *Bueno* focuses exclusively on an aspect of governmental activity—furnishing the defendant narcotics to sell—and applies even where the *Sherman-Sorrells* type of entrapment—

---

11. We decline to consider Appellant's belated second thought contention raised here for the first time that he was entitled to a verdict of entrapment as a matter of law on the grounds that the government failed to satisfactorily explain its contingent fee arrange-

ment with the informer, the existence of which was brought out on cross-examination relying on Williamson v. United States, 1962, 5 Cir., 311 F.2d 441.

1. See, e. g., footnote 8, *supra*.

which turns exclusively on defendant's predisposition to the crime—does not exist.

In *Russell*, after pointing out that the Court of Appeals had expanded the traditional notion of entrapment which "focuses on the predisposition of the defendant" to require dismissal by focusing upon governmental activity and the degree of it, after citing *Bueno* as well as some other circuit and district court cases, and after pointing out (on the same page) that in *Sorrells* the thrust of the entrapment defense as recognized by the Court was toward the predisposition of the defendant while the minority focused on activity of the government, the Court observes:

> We are content to leave the matter where it was left by the Court in Sherman. . . . Several decisions of the United States district courts and courts of appeals have undoubtedly gone beyond this Court's opinion in Sorrells and Sherman in order to bar prosecutions because of what they thought to be for want of a better term "overzealous law enforcement." But the defense of entrapment enunciated in those opinions [context indicates Supreme Court's opinions in *Sherman* and *Sorrells*] was not intended to give the federal judiciary a "chancellor's foot" veto over law enforcement practices of which it did not approve. . . . It is *only* when the government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play. (emphasis added)

411 U.S., at 434, 93 S.Ct. at 1644, 36 L.Ed.2d, at 375.

It seems plain to me that in its *Russell* opinion the Court is saying that there have been two views about entrapment since its inception, a majority view which focused solely on the predisposition of the defendant and a minority view which focused either solely or in addition on the activity of the governmental agents, and that the Court deliberately rejects the second view[2] and hews to the first. For whatever it may be worth, I am not here disagreeing with *Bueno* and its siblings at all. I simply think the Supreme Court does and has said so.

---

2. Except for an anchor to windward concerning conduct of government agents with which the Court "may some day be presented . . . so outrageous that due process would absolutely bar the government from invoking judicial processes to obtain a conviction." 411 U.S., at 431, 93 S.Ct. at 1642, 36 L.Ed.2d, at 373. Cited as an analogous situation is Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), in which incriminating evidence was recovered from a handcuffed defendant by means of an emetic solution forced through a tube inserted against his will into his stomach. The *Bueno* situation and those in other cases cited and ready-to-hand were not instanced.