**UNITED STATES of America**

v.

**Gary WEST, Appellant.**

**No. 74–1279.**

United States Court of Appeals, Third Circuit.

Argued Oct. 21, 1974.

Decided Feb. 25, 1975.

---

Albert L. Deutsch, Stanley Bashman, Bashman, Deutsch & Bernstein, Philadelphia, Pa., for appellant.

Frank J. Bove, Asst. U. S. Atty., Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appeals Div., for appellee.

Before HASTIE, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

In the district court, sitting without a jury, the Appellant, Gary West, was tried and convicted on three counts on an indictment. Count 1 charged unlawful distribution of about 9 grams of heroin on January 23rd. Similarly, count 2 charged the distribution of about 7 grams on January 25th. Count 3 charged knowing possession of about 4 grams of heroin on January 29 with intent to distribute. West was sentenced, "under counts 1, 2 and 3" generally, to imprisonment for a period of five years with particular provisions concerning parole.

To establish its case the government introduced testimony by Herbert Laguins that he had purchased heroin from West in the amounts and at the times set out in counts 1 and 2. Concerning count 3, two arresting officers testified that on January 29, pursuant to a telephone call in which Laguins had informed them that West was on his way to meet Laguins and sell him two bundles of heroin, they intercepted West en route and found two bundles of heroin in his car.

Laguins was a police officer, working undercover and assigned to purchase narcotics from and thus obtain evidence against unlawful sellers. Beyond testifying about the above outlined transac-

tions, Officer Laguins also acknowledged that a Robert Chieves had introduced him to West in the following circumstances. Chieves had been arrested, apparently on a narcotics charge. "Pursuant to that arrest", according to Officer Laguins' testimony, he arranged with Chieves that Chieves would introduce him to other illicit vendors from whom he could purchase narcotics. Thereafter, Chieves introduced Laguins to West. At that time Chieves and West together proposed to Laguins that they would provide him with five bundles of heroin, weekly or at more frequent intervals. They proposed further that this be done on consignment with Laguins paying them an agreed price for each consignment after he had resold the heroin. The next consignment would then be delivered to him. Laguins agreed to this proposal and Chieves and West delivered a first consignment to him on January 19. Shortly thereafter, he paid for this and on January 23 received another consignment for which he paid before receiving a third consignment on January 25th. West was arrested on January 29 while allegedly en route to deliver another consignment to Laguins.

All of this appears from the case for the prosecution. Most of it was confirmed, but also explained and amplified, by testimony of the accused West in his defense. He and Chieves were old friends. Chieves, learning that West was in serious need of money, approached him and proposed that they join in a scheme of selling fake or "overcut" heroin on consignment to Laguins, an acquaintance of Chieves. Chieves, who already was in trouble with the law, would supply the heroin and establish contact with a buyer but wanted West to hold himself out as the seller. They would divide the profits.

West testified further that he was regularly employed by the City of Philadelphia as a truck driver and that he had never had any part in the narcotics traffic before Chieves persuaded him to join in the scheme which was to be his undoing. At this point it is noteworthy that, in the course of concluding argument, the prosecutor, with commendable candor, conceded that West had no history of past participation in the narcotics traffic. And this is strongly, if inferentially, confirmed by the fact that he had been allowed to sign his own bond for release after indictment and pending trial.

■ This case is unusual in that the uncontradicted evidence shows a confederation of two government agents, one an informer who, according to uncontradicted testimony, actually supplied the narcotics in question and the other an undercover officer who, as prearranged with the informer, bought this contraband from the accused third person whom the informer had persuaded to join with him in a selling venture.

■ In two recent cases, both remarkably similar to this case, the Court of Appeals for the Fifth Circuit has held that a conviction may not be founded on a sale of narcotics which a government informer had supplied to the accused for sale to an undercover agent. United States v. Bueno, 1971, 5 Cir., 447 F.2d 903; United States v. Mosley, 1974, 5 Cir., 496 F.2d 1012. In our view these decisions are sound. Frequently, it is permissible law enforcement practice for an undercover agent to obtain evidence of unlawful traffic in narcotics by purchasing heroin from a suspected drug peddler. But when the government's own agent has set the accused up in illicit activity by supplying him with narcotics and then introducing him to another government agent as a prospective buyer, the role of government has passed the point of toleration. Moreover, such conduct does not facilitate discovery or suppression of ongoing illicit traffic in drugs. It serves no justifying social objective. Rather, it puts the law enforcement authorities in the position of creating new crime for the sake of bringing charges against a person they had persuaded to participate in wrongdoing. It was this evil of law enforcement officers instigating a criminal act by persons "otherwise innocent in order to lure

them to its commission and to punish them" that led the Supreme Court to its first reversal of a conviction on the ground of entrapment. Sorrells v. United States, 1932, 287 U.S. 435, 448, 53 S.Ct. 210, 215, 77 L.Ed. 413.

The recent decision of the Supreme Court in United States v. Russell, 1973, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366, upon which the government relies, does not sanction what the government agents did in this case. In *Russell*, an undercover government agent, having good reason to believe that a suspect was engaged in an ongoing enterprise of unlawfully manufacturing and selling certain restricted drugs, supplied the suspect with a lawfully obtainable but scarce chemical ingredient for use in the illicit manufacture. The Supreme Court held that this governmental conduct did not preclude conviction of the manufacturing seller. The opinion emphasized that the accused "was an active participant in an illegal drug manufacturing enterprise which began before the Government agent appeared on the scene, and continued after the Government agent had left the scene". 411 U.S. at 436, 93 S.Ct. at 1645. In these circumstances a majority of the Court did not view the nature or extent of the government agent's assistance to the manufacturing enterprise as intolerable. And as concerned predisposition, the evidence was overwhelming. We find no suggestion or implication that the legal result would have been the same if the accused had not already been engaged in the illicit traffic or if the government agent had supplied him with contraband drugs rather than lawful articles of commerce.

While we view West's case as one of intolerable conduct by government agents, one supplying and the other buying the narcotics, the same result is reached if the entrapment aspect of this case is analyzed as depending solely on the predisposition of West to engage in illicit drug traffic. The government argues that the series of sales made by West during the latter part of January,

the first predating the transactions for which he was indicted, shows predisposition. But if, as the evidence indicates, these four transactions among the same three people within a ten day period were all part of a scheme proposed by a government agent, the relevant predisposition is West's attitude on January 19, just before the government agent enlisted his participation in the venture. Certainly, the fact that he was not indicted for his first sale in implementation of the informer's plan does not make that sale evidence that he was already engaged in the drug traffic or merely awaiting an opportunity to do so. West's conduct undoubtedly reflects unfavorably upon his strength of character, but it does not establish a prior inclination to engage in this evil business. And the evidence that he was and for a considerable time had been regularly employed as a municipal truck driver, the prosecution's concession that he appeared to be a first time offender and the fact that, after his arrest, it was deemed appropriate to release him on his own recognizance all point the other way.

We have not overlooked the fact that West's own testimony was the only evidence of the source of the heroin or the way in which Chieves enlisted him in the enterprise. There was, however, Laguins' testimony indicating that he had recruited Chieves, a charged offender, to find other persons from whom he might purchase drugs. Certainly, these circumstances lend plausibility to West's testimony as to Chieves' role, including the supplying of the drugs.

■ Once this evidence of the source of the narcotics was introduced, the burden was upon the prosecution to prove beyond reasonable doubt that the government informer did not supply the drugs. United States v. Silver, 3d Cir. 1972, 457 F.2d 1217; United States v. Landry, 7th Cir. 1958, 257 F.2d 425; United States v. Bueno, *supra.* This the government did not even attempt to do.

We are not sure whether our dissenting colleague disagrees with the general rule, which the *Silver* case adopts for

this circuit, that the prosecution bears the burden of proof on entrapment when it becomes a contested issue in a criminal case. In any event, we think it must be the dissenting contention that the defendant's unrefuted testimony, which if true would establish entrapment, must go to the trier of fact and, if the trier of fact disbelieves that testimony, then the prosecution can be said to have proved beyond reasonable doubt that there was no entrapment.

It seems to us that this in effect puts the burden of proof on the entrapment issue upon the accused. To avoid this improper consequence the burden of going forward, in this case the burden of making some showing contrary to the testimony of the accused, must be imposed on the prosecution, once evidence, sufficient on its face to prove entrapment, is introduced by the defense. In the absence of some such showing the court should enter a judgment of acquittal.

What this procedural rule does is to prevent the trier of fact from ever passing upon the credibility of certain defense testimony, unless and until the prosecution has made some showing to the contrary. But this is no unreasonable burden here since a government agent knows and can testify to the relevant facts, thus getting the issue and the question of credibility it involves to the jury. We deem this a fair and appropriate way of avoiding an improper imposition of the burden of proof upon the accused.

The decision of the Supreme Court in Masciale v. United States, 1958, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859, upon which the dissent-opinion relies, does not discredit the foregoing analysis. For even though there was no direct contradiction of testimony of Masciale that he had been overborne by the overreaching of a government agent, the prosecution satisfied its burden of going forward through contravening testimony of its witness that the accused, when solicited to procure narcotics, had boasted of his acquaintance with someone "high up in the narcotics traffic" and of his ability to procure heroin. *Cf.* United States v. Soto, 5th Cir. 1974, 504 F.2d 557.

It follows that the conviction on counts 1 and 2 cannot stand. However, count 3 presents different considerations. West does not contend that Chieves supplied him with the two bundles of heroin found in his car. Rather, he testified that he did not know how it got there. Laguins testified that a few minutes before West's arrest and the discovery of this heroin in his possession, West had stated in a telephone conversation that he was en route to deliver two bundles to Laguins. Thus, the defense that must prevail on counts 1 and 2 is not supported by the evidence on count 3. However, West was sentenced generally to five years imprisonment on all three counts. It may well be that if the court had considered only the third count and the evidence relevant to the events of January 29, as now it must, a less severe sentence would have been imposed. Therefore, there must be a resentencing on count 3.

The conviction on counts 1 and 2 will be reversed and the general sentence vacated. The conviction on count 3 will be affirmed. The cause will be remanded for entry of judgment of acquittal on counts 1 and 2 and for resentencing on count 3 without consideration of the wrongdoing charged in the other counts.

WEIS, Circuit Judge (dissenting):

As the majority opinion indicates, it relies principally upon United States v. Bueno, 447 F.2d 903 (5th Cir. 1971), cert. denied, 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973). That case stands for two important propositions, both of which are relevant here—one substantive and the other procedural.

From a substantive viewpoint, *Bueno* stands for the premise that entrapment, as a matter of law, is established when a government informer supplies narcotics to the defendant for sale to an undercover agent. The validity of this proposition has been subject to question since the Supreme Court's decision in United

States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). *See* United States v. Hampton, 507 F.2d 832 (8th Cir. 1974); United States v. McGrath, 494 F.2d 562 (7th Cir. 1974); United States v. Jett, 491 F.2d 1078 (1st Cir. 1974); United States v. Johnson, 484 F.2d 165 (9th Cir.), cert. denied, 414 U.S. 1112, 94 S.Ct. 842, 38 L.Ed.2d 739 (1973); United States v. Ewbank, 483 F.2d 1149 (9th Cir. 1973); United States v. Pollard, 483 F.2d 929 (8th Cir. 1973), cert. denied, 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974); and United States v. Hayes, 477 F.2d 868 (10th Cir. 1973). *Cf.* United States v. Soto, 504 F.2d 557 (5th Cir. 1974); United States v. Mosley, 496 F.2d 1012 (5th Cir. 1974); and United States v. Oquendo, 490 F.2d 161 (5th Cir. 1974). *See also* Judge Friendly's discussion in United States v. Archer, 486 F.2d 670, 674–77 (2d Cir. 1973). Generally, the division of opinion represents a continuation of the debate whether "objective" or "subjective" tests should be applied to the entrapment defense.[1] It is this dispute which underlies the 5–4 division of the Supreme Court in *Russell, supra.*[2] Although I have some doubt that the *Russell* decision left any viability to the substantive law in *Bueno*, I focus my dissent on the procedural aspects of that opinion.

The *Bueno* court held that when a defendant testifies to facts which would establish an objective type of entrapment, the government must come forth with contrary evidence if it is to carry its burden of proving guilt beyond a rea-

sonable doubt. As another panel of the Fifth Circuit Court of Appeals explains it, " . . . when a defendant testified that he obtained the contraband from a government undercover agent, the Government must produce the undercover agent to contradict the defendant's allegations in order to take the case to the jury. Ms. Reaves, the undercover agent, did in fact testify in this case. Then the jury must find beyond a reasonable doubt that the defendant did not obtain the contraband in question from the undercover agent." United States v. Mosley, *supra*, 496 F.2d at 1015.

Neither *Bueno* nor *Mosley* discussed the holding of the Supreme Court in United States v. Masciale, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958). That case involved a claim of subjective entrapment where criminal predisposition is a prominent element. The informant was not called to testify, but the entrapment contentions were established by the testimony of the defendant. The Court held, "Petitioner argues that this undisputed testimony explained why he was willing to deal with Marshall [the undercover agent] and so established entrapment as a matter of law. However, his testimony alone could not have this effect. While petitioner presented enough evidence for the jury to consider, they were entitled to disbelieve him in regard to Kowel [the informant] and so find for the Government on the issue of guilt. Therefore, the trial court properly submitted the case to the jury."[3] 356 U.S. at 388, 78 S.Ct. at 829.

---

1. In entrapment cases, the "objective" theory, also known as the "creative activity" doctrine, directs the court's attention to misconduct of government agents rather than the particular defendant's conduct and criminal predisposition. *See* Bergan, Criminal Law—Entrapment in the Federal Courts—Subjective Test Reaffirmed Against Lower Court Departures, 42 Fordham L.Rev. 454 (1973).

2. The majority opinion in *Russell* left open for future consideration "a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction . . . ." 411 U.S. at 431–32, 93 S.Ct. at 1643.

3. In United States v. Workopich, 479 F.2d 1142 (5th Cir. 1973), a panel of the Fifth Circuit did analyze the *Masciale* decision. In an opinion which I am unable to reconcile with the procedural holdings in *Bueno* and *Mosley*, the court said, "Thus, when the undisputed testimony of a defendant is the sole basis for an entrapment defense, entrapment is not established as a matter of law but rather is an issue for the jury to decide. Accord, United States v. Burgess, 5 Cir. 1970, 433 F.2d 987. *Cf.* United States v. Bueno, 5 Cir. 1971, 447 F.2d 903, where, when the government supplied contraband to the defendant, his uncontradicted testimony established entrapment as a matter of law." 479 F.2d at 1146. If the Fifth Circuit thus means

In United States v. Jett, *supra*, in a factual situation almost identical to the one *sub judice*, the court refused to accept the rationale of *Bueno* on the ground that it had failed to consider the effect of *Masciale*. The *Jett* court followed the general rule that " . . . where the law attaches some inferential consequence to the introduction of evidence, this means credited evidence—if the jury disbelieves it, it becomes, in effect, no evidence." 491 F.2d at 1080. This view is in agreement with the principle set out in VII Wigmore on Evidence § 2034, "(3) Conversely, *the mere assertion of any witness* does not of itself need to be believed, *even though he is unimpeached* in any manner; because to require such belief would be to give a quantitative and impersonal measure to testimony." *Accord*, United States v. Johnson, 495 F.2d 242 (10th Cir. 1974); United States v. Saka, 339 F.2d 541 (3d Cir. 1964); and Wooley v. Great Atlantic & Pacific Tea Co., 281 F.2d 78 (3d Cir. 1960).

In the instant case, the majority places upon the prosecution the burden "to prove beyond reasonable doubt that the government informer did not supply the drugs." If the informer is not produced, then the uncontradicted (and uncorroborated) testimony of the defendant establishes a fact which, in turn, leads to a finding of entrapment as a matter of law. In this, I believe the majority opinion is contrary to *Masciale* and unduly inhibits the scope of the fact finder's competence.[4]

The trial here was non jury, and although the defendant argued entrapment upon a factual pattern similar to *Bueno*, he did not cite that case to the district court. In his memorandum opinion, the trial judge discussed United States v. Russell, *supra*, and the cases relied upon by the defendant—Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) and Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). In finding against the defendant West, the district court stated:

"It is true that when the defense of entrapment is properly raised the burden of proof is on the Government to prove beyond a reasonable doubt that the defendant was not entrapped. United States v. Silver, 457 F.2d 1217 (3d Cir. 1972). Here, the evidence indicates beyond a reasonable doubt that there was no entrapment and that defendant was predisposed to commit the crime."

And again:

"Although the defendant has claimed solicitation by the government agent and lack of disposition on his part to deal in drugs, his 'course of conduct' in the series of transactions with Officer Laguins indicates to the contrary. The Court, as trier of the fact, evaluated the defendant's credibility and found the defendant's testimony concerning his alleged entrapment by the government officials not worthy of belief."

It is arguable that these findings do not specifically pass upon the defendant's contention that the heroin was supplied by the informant. This is understandable since the *Bueno* issue was not presented to the trial judge. So that there could be no doubt about this important factual matter, I would remand to the district court for further findings.

I concur with the affirmance on Count 3.

---

to establish a different procedural rule for the objective type of entrapment as distinguished from the subjective, it gave no reasons for doing so, and I am unable to understand why such disparity should exist.

4. For a discussion of the quantum of evidence required to make entrapment a jury question, *see* United States v. Watson, 489 F.2d 504 (3d Cir. 1973).