407 F.2d 1087
 UNITED STATES of America, Appellee,
v.
Richard Thomas HART, Defendant-Appellant.
 No. 355, Docket 31138.
 United States Court of Appeals Second Circuit.
 Argued Feb. 7, 1969.
Decided Feb. 27, 1969, Certiorari Denied May 19, 1969, See
89 S.Ct. 1766.
 
 1
 Gilbert S. Rosenthal, New York City, (H. Elliot Wales, New York City, on the brief), for appellant.
 
 
 2
 William B. Gray, Asst. U.S. Atty., Southern District of New York (Robert M. Morgenthau, U.S. Atty., and Douglas S. Liebhafsky, Asst. U.S. Atty., Southern District of New York, on the brief), for appellee.
 
 
 3
 Before ANDERSON and FEINBERG, Circuit Judges, and MANSFIELD, District Judge.*
 
 MANSFIELD, District Judge:
 
 4
 This is an appeal from a conviction, after a jury trial, for theft of 18 copper ingots which were part of a foreign shipment. 18 U.S.C. 659. We find no error and affirm.
 
 
 5
 The Government's case was based largely on the testimony of Waterfront Commission Inspector Sidney Huckvale. On the morning of January 18, 1966 he observed appellant Hart driving a hi-lo off Pier 54 (North River) and noticed in it what looked like some copper ingots, partially hidden by a canvas covering on the vehicle. He followed and stopped Hart after he turned into a parking lot on 19th Street, near the garage of T. Hogan & Sons ('Hogan'), the stevedore for Pier 54. Huckvale pulled back the canvas covering and discovered 13 copper ingots; 5 more were later found in the hi-lo's engine compartment. After showing his Waterfront Commission registration card, Hart told Huckvale that he was working for Hogan and had received a call from the Hogan garage to bring the hi-lo over. He also informed Huckvale that he always rode the bus from his home in New Jersey to work because he had no driver's license.
 
 
 6
 Other evidence showed that on that day Hart was not working for Hogan, but was employed as an extra laborer by the United States Lines, for which he was working as a loader, and that a station wagon registered to Joan Hart at his home address was in the parking lot with its tailgate down, its cargo space empty except for a blanket, and its keys in the ignition.
 
 
 7
 Hart did not take the stand or call any witnesses on his behalf. His first contention on this appeal is that he was inhibited from taking the stand by the trial court's refusal to make an anticipatory ruling that certain statements made by him after his arrest, which were claimed by him for the first time at the close of the Government's case at trial to have been elicited in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,816 L.Ed. 694 (1966), could not be used against him for any purpose, including impeachment on collateral issues. The statements were never introduced into evidence by the Government.
 
 
 8
 It does not appear from the record that Hart made any representation to the trial court that he would take the stand if the trial judge would rule in advance that the statements could not be used for collateral impeachment, and no persuasive reason is advanced for his not having taken the stand. We are therefore left to speculate as to his reasons for not doing so. One possible reason was the existence of a prior conviction. Another was a rule existing in this Circuit at that time which permitted statements elicited in violation of an accused's Fifth and Sixth Amendment rights to be used for collateral impeachment, United States v. Curry, 358 F.2d 904 (2d Cir.), cert. denied 385 U.S. 873, 87 S.Ct. 147, 17 L.Ed.2d 100 (1966), reiterated after Miranda in United States v. Mullings, 364 F.2d 173 (2d Cir.1966), which was not repudiated until after appellant's conviction United States v. Fox, 403 F.2d 97 (2d Cir. 1968). If Hart had taken the stand, the trial court would probably have followed the then viable Curry-Mullings doctrine. However, it is also possible that the Government would not have attempted to use the statement at all or, if it did, that the court might have ruled it out as not truly collateral in nature. In this context we hold that the trial judge did not abuse his discretion in refusing to give an anticipatory ruling.
 
 
 9
 Hart's second contention is that the admission as part of the Government's direct case of testimony given by him in a pretrial suppression hearing was erroneous under the principle announced in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Hart did not raise this point at his trial which was prior to the decision of the Supreme Court in Simmons. Normally the failure to raise a constitutional question by a proper objection at trial forecloses consideration of that question on appeal. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). However, where a constitutional ground recognized for the first time in a Supreme Court decision is to be given retroactivity, the blind application of Indiviglio would be unduly harsh where the principle was unknown to counsel at the time of trial. We must therefore decide whether retroactive effect is to be given to Simmons.
 
 
 10
 We conclude that Simmons should not be given retroactive application. A number of recent Supreme Court decisions have considered the question of whether or not various constitutional decisions relating to the criminal process should be applied retroactively.[1] They indicate that three factors are to be considered in determining the issue: first, the purpose of the principle under consideration, second, the extent to which law enforcement personnel may justifiably have relied upon prior law, and, third, the probable impact of retroactive application upon the administration of criminal justice.
 
 
 11
 The most important of these three factors is the purpose of the principle involved. The primary purpose of the rule announced in Simmons is to insure that defendants will not be deterred from asserting their Fourth Amendment rights in suppression hearings by fear that their testimony many later be used against them before the jury. 390 U.S. at 392-394, 88 S.Ct. 967. Since the rule is not concerned with the reliability of the defendant's suppression hearing testimony, the integrity and reliability of the fact finding process, which is a fundamental factor influencing retroactivity, is not involved. Compare Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) with Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731 (1965) and Stovall v. Denno, 388 U.S. 293, 88 S.Ct. 1967 (1967). Furthermore, the purpose of Simmons would not be served by retroactivity, since retroactive application would only serve to benefit those like Hart who were not deterred from testifying at a suppression hearing. If, on the other hand, a defendant did not testify in such a suppression hearing, the issue would never arise.
 
 
 12
 The other relevant considerations also point in the direction of denying retroactive application to Simmons. Prosecutors may reasonably have relied upon the preponderance of authority prior to Simmons to the effect that a defendant's suppression hearing testimony was admissible at least where the motion to suppress was denied. Simmons 390 U.S. at 392 n. 16, 88 S.Ct. 967. Furthermore, the only other federal court which has considered the question has concluded that retroactive application of Simmons might significantly disrupt the administration of criminal justice. See Monroe v. United States, 288 F.Supp. 139 (E.D.La.1968).
 
 
 13
 Appellant contends, however, that he should have the benefit of Simmons because his case is before this court on direct appeal and not on collateral attack. Such a distinction has been drawn with respect to the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and the prohibition on a state prosecutor's commentary on defendant's failure to testify in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Linkletter v. Walker, 381 U.S. 618, 622 n. 4, 85 S.Ct. 1731; Tehan v. United States ex rel. Shott, 382 U.S. 406, 409 n. 3, 86 S.Ct. 459 (1966); cf. United States v. Tarrago, 398 F.2d 621 (2d Cir. 1968) (en banc). The Supreme Court, in denying retroactive application to Miranda, however, rejected such a distinction, Johnson v. New Jersey, 384 U.S. 719, 732-734, 86 S.Ct. 1772 (1966), and we think that the distinction is no more viable with respect to Simmons than it was with respect to Miranda. All of the reasons we have given for denying retroactive application to Simmons, with the exception of that based upon the potentially disruptive effect of such application, are fully applicable to cases on direct appeal. We therefore hold that the Simmons principle is to be applied only to those cases where the defendant's suppression hearing testimony was offered after the date of that decision.
 
 
 14
 Hart's contentions that improper remarks by the prosecuting attorney in his summation call for reversal are without merit. The Assistant United States Attorney's statement 'I say that it is undisputed because there is no testimony that opposes it,' was not a comment on defendant's failure to testify, but referred to defense counsel's concession that Hart drove the hi-lo off the pier. It is only where the Government's evidence on a material issue in dispute could be rebutted solely by defendant's testimony that it is improper for the prosecutor to characterize the Government's proof as uncontradicted. Desmond v. United States, 345 F.2d 225, 14 A.L.R.3d 718 (1st Cir. 1965). Nor did the prosecutor refer to evidence not in the record by calling the jury's attention to statements by the defendant which were later changed. The statements referred to were those made to Huckvale which he testified to; the later change refers to the statements made by defendant at his suppression hearing, and those statements were before the jury. It is difficult to understand how the jury could have understood this remark to refer to any other statements when they had no knowledge of the other statements which were not introduced into evidence.
 
 
 15
 Hart next claims that certain portions of the trial court's instructions compel reversal. Since appellant took no exceptions at trial on the grounds he now asserts before this court, only plain error would call for reversal. United States v. Friedland, 391 F.2d 378 (2d Cir. 1968). Although the trial court, in instructing with respect to the meaning of reasonable doubt, did not advise the jury to employ the standard of 'hesitation to act' in a matter of personal importance to themselves, the language of the charge, when read as a whole, was not plainly erroneous. United States v. Bilotti, 380 F.2d 649 (2d Cir. 1967). At the same time it should be emphasized that the 'hesitate to act' language in our opinion more effectively conveys to a jury the meaning of reasonable doubt than most other formulations, see Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), and if trial judges were to use such approved phraseology consistently, this court would not repeatedly face the problem of studying possible deficiencies and hidden implications attributed to other language, including the ambiguous term 'moral certainty' in its many variations. See United States v. Johnson, 343 F.2d 5, 6 (2d Cir. 1965); United States v. Byrd, 352 F.2d 570, 575 (2d Cir. 1965); United States v. Nuccio, 373 F.2d 168, 174-175 (2d Cir. 1967). The trial judge's instruction that participation in the theft may be inferred from the possession of recently stolen goods is a correct statement of the law. McNamara v. Henkel, 226 U.S. 520, 524-525, 33 S.Ct. 146, 57 L.Ed. 330 (1913); United States v. DeSisto, 329 F.2d 929, 935 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).
 
 
 16
 For the foregoing reasons appellant's conviction is affirmed.
 
 
 
 *
 Of the Southern District of New York, sitting by disignation
 
 
 [1]
 Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (per curiam); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) (per curiam); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)