UNITED STATES of America, Appellee,

v.

Vincent INGENITO, Appellant.

No. 449, Docket 75–1312.

United States Court of Appeals,
Second Circuit.

Argued Nov. 17, 1975.

Decided March 16, 1976.

Certiorari Denied June 14, 1976.
See 96 S.Ct. 2656.

Jonathan J. Silbermann, New York City (The Legal Aid Society, Federal Defender Services Unit, William J. Gallagher, New York City, on the brief), for appellant.

Frederick W. Read, III, Atty., U. S. Dept. of Justice, Washington, D. C. (David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., on the brief), for appellee.

Before FEINBERG, MANSFIELD and GURFEIN, Circuit Judges.

FEINBERG, Circuit Judge:

Appellant Vincent Ingenito was convicted, after a jury trial in the United States

District Court for the Eastern District of New York before Judge Jack B. Weinstein, of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1). Appellant, who was sentenced to a prison term of three years, argues that we should overturn his conviction because: (1) The trial judge committed plain error in failing to instruct the jury that it must acquit Ingenito if it found that a government informer had supplied him with the firearms; and (2) the special attorney who presented the case to the grand jury exceeded his authority in obtaining the indictment of appellant. We reject both of these claims and we affirm the judgment of conviction.

## I

The jury could justifiably have found the following relevant facts. In June 1974, Frank DuBois (a/k/a Frank Davis) told federal authorities in Brooklyn that Ingenito was offering guns for sale. DuBois then arranged a meeting at a Brooklyn parking lot later that month between federal undercover agent Bartholomew Aversano and Ingenito. At that time, Ingenito sold the agent a pistol and some ammunition for $200 cash. At a second meeting two days later, appellant sold the agent another pistol for $164 cash, and the two discussed the possible sale of other weapons, including a machine gun. Ingenito was subsequently arrested.

At trial, Ingenito argued that he had been entrapped by the Government's informer, DuBois.[1] Ingenito testified that DuBois had supplied him with the guns and persuaded him to sell the weapons to Agent Aversano. Ingenito also claimed that he gave DuBois most of the money from the sales. DuBois, testifying as a government witness, denied that he persuaded Ingenito to make the sale, supplied weapons to him, or received any money from the sales. On the entrapment issue, the court charged that when the evidence showed government inducement, then the Government had to establish beyond a reasonable doubt that Ingenito had been predisposed to sell the guns. There was no objection to this charge, and the jury returned a guilty verdict.

## II

Appellant now claims that the judge should have charged that the jury had to acquit him if it found, as Ingenito claimed, that the government informer had supplied him with the guns he sold to the agent. This, according to appellant, would constitute entrapment as a matter of law. Appellant concedes that he did not request this charge at trial, but argues that this does not matter because the judge's failure to so charge was plain error.

Appellant raises his basic point in what appear to be two slightly different arguments. The first is that the nonconstitutional defense of entrapment should focus exclusively on the Government's conduct— at least where the Government furnishes defendant the contraband necessary to commit the alleged crime—without regard to defendant's predisposition. The second argument is that due process precludes conviction of a defendant to whom the Government has furnished the indispensable contraband for commission of the crime. The issues raised by these claims have been the subject of considerable attention both by courts and commentators. In 1973, the Supreme Court rejected similar arguments in *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366. In that case, a government agent had supplied to defendant Russell a rare chemical used in the manufacture of methamphetamine, commonly known as "speed." Thereafter, Russell was convicted of the unlawful manufacture and sale of that drug. The Ninth Circuit dismissed the indictment because of "an intolerable degree of governmental participation in the criminal enterprise." 459 F.2d 671, at 673. The Supreme Court reversed, declining either to change the usual

---

1. Ingenito's other defense was that he was not a "dealer" in guns.

entrapment test or to hold that the "law enforcement conduct" in that case violated due process. 411 U.S. at 432, 93 S.Ct. at 1643, 36 L.Ed.2d at 373.

The issue, however, has not disappeared. Shortly after the Court's decision in *Russell,* the Fifth Circuit distinguished it on the ground that the chemical supplied there by the government agent was not illegal contraband. *United States v. Oquendo,* 490 F.2d 161, 163 (1974). In that circuit, therefore, the law continues to be that a defendant must be acquitted if the undercover agent supplies him with the narcotics he then sells. See *United States v. Mosley,* 496 F.2d 1012, 1016, pet. for reh. en banc denied, 505 F.2d 1251 (1974); *United States v. Bueno,* 447 F.2d 903 (1971). The Third Circuit has adopted the same view. *United States v. West,* 511 F.2d 1083 (1975). On the other hand, various other courts of appeals do not read *Russell* so narrowly and reject the proposition that the Government's conduct in supplying contraband bars a conviction. *United States v. Hampton,* 507 F.2d 832 (8th Cir. 1974); *United States v. McGrath,* 494 F.2d 562 (7th Cir. 1974); *United States v. Jett,* 491 F.2d 1078 (1st Cir. 1974). See Comment, Criminal Procedure: Entrapment Rationale Employed to Condemn Government's Furnishing of Contraband, 59 Minn.L.Rev. 444 (1974).

The issue is again before the Supreme Court, which granted certiorari in *Hampton,* supra, in March 1975, 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761, and heard argument in that case in December 1975, 44 U.S.L.W. 3343. The Government urges us not to defer disposition of this appeal until *Hampton* is decided because that case is, in any event, distinguishable; the guns allegedly supplied by DuBois to Ingenito here were not "inherently unlawful merchandise" or contraband while the narcotics supplied in *Hampton* were. Appellant replies that the distinction is not persuasive be-cause the weapons here, like narcotics, are contraband under federal law. We need not enter this fray because we agree with the Government that we should not hold up our decision, but for a different reason.

It is conceded that appellant never asked for the charge he now claims Judge Weinstein should have given. Thus, under Fed. R.Crim.P. 30,[2] the point would ordinarily be waived. Appellant relies, however, on the saving language of Fed.R.Crim.P. 52(b) that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, it must be recalled that there was a sharp factual conflict at trial over whether DuBois had supplied guns to Ingenito. If the jury believed DuBois's testimony that he had not, then the basic premise of appellant's argument for entrapment as a matter of law would fail. It is at least likely that the jury did accept the testimony of DuBois on this issue rather than that of Ingenito, because the verdict probably reflects a rejection in other respects of Ingenito's version of the events. Of course, we cannot be sure that the jury believed DuBois's story that Ingenito obtained the guns from someone else. But we obviously also cannot be sure of the opposite, that is, that DuBois supplied the guns to appellant. That proposition is the factual basis of appellant's argument that he was entrapped as a matter of law. Moreover, the validity of the legal rule for which appellant contends is, as shown above, in sharp dispute, and has not been adopted as yet in this circuit. Cf. *United States v. Rosner,* 485 F.2d 1213, 1221–23 (2d Cir. 1973), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *United States v. Archer,* 486 F.2d 670, 674–77 (2d Cir. 1973). Under these circumstances, although we express no view on the merits of appellant's basic legal contention, we do not see how we can find that the district judge committed plain error here. *Lopez v. Unit-*

---

**2.** The Rule provides in pertinent part:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to con-sider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

*ed States,* 373 U.S. 427, 436, 83 S.Ct. 1381, 1386, 10 L.Ed.2d 462, 468 (1963). Accordingly, we reject his first argument for overturning his conviction.

### III

█ Appellant also claims that his indictment was invalid because the special attorney of the Department of Justice Organized Crime Strike Force, who presented evidence to the grand jury, had not been properly authorized to do so under 28 U.S.C. § 515(a).[3] We recently considered an attack on the authority of a Strike Force attorney in *In re Persico,* 522 F.2d 41 (1975). The claim there was that the language of the attorney's authorizing commission was too broad to satisfy the requirement of section 515(a) that an attorney "specially appointed by the Attorney General" be "specifically directed" to conduct a legal proceeding. In an extremely thorough opinion by District Judge Weinstein,[4] we analyzed the background and purpose of that section and the decisions construing it. In rejecting the attack there on the necessarily flexible and comprehensive power of the Strike Force to deal effectively with the full range of organized crime activity, we concluded that section 515(a) "should be read to support an indictment wherever it is reasonable to do so," that "The 'specifically directed' phrase in Section 515(a) should not be so niggardly construed as to interfere with the federal government's ability to efficiently administer its criminal laws," and that a Strike Force attorney's authority to conduct grand jury proceedings "need not be embodied in a single written authorization, but may be implied from other writings, guidelines, practices and oral directions transmitted through a chain of command within the Department." 522 F.2d at 63, 64, 66.

Appellant attempts to distinguish *Persico* on the ground that here the attorney's commission, which is reproduced in the margin,[5] was too narrow rather than too broad. It is

---

**3.** That section provides:

The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

**4.** Sitting by designation.

**5.**
 ASSISTANT ATTORNEY GENERAL
 CRIMINAL DIVISION
 DEPARTMENT OF JUSTICE
 WASHINGTON 20530
 September 28, 1972
Mr. David J. Ritchie
Criminal Division
Department of Justice
Washington, D. C.
Dear Mr. Ritchie:
 As an attorney and counselor at law you are hereby specially retained and appointed as a Special Attorney under the authority of the Department of Justice to assist in the trial of the case or cases growing out of the transactions hereinafter mentioned in which the Government is interested. In that connection you are specifically directed to file informations and to conduct in the Eastern District of New York and in any other judicial district where the jurisdiction thereof lies any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized by law to conduct.

 The Department is informed that various persons, companies, corporations, firms, associations, and organizations to the Department unknown have violated in the above-named district and in other judicial districts the laws relating to extortion in aid of racketeering (18 U.S.C. 1951), embezzlement of union funds (29 U.S.C. 501(c)) and the funds of welfare and pension plans (18 U.S.C. 664), payments by employers to their employees and to officials of labor organizations (29 U.S.C. 186), the filing of reports and the maintenance of records by unions and union officials (29 U.S.C. 439), deprivation of the rights of a union member by force (29 U.S.C. 530), obstruction of justice (18 U.S.C. 1503), obstruction of criminal investigations (18 U.S.C. 1510), obstruction of state or local law enforcement (18 U.S.C. 1511), travel and transportation in aid of racketeering (18 U.S.C. 1952), transmission of bets, wagers, and related information by wire communications (18 U.S.C. 1084), interstate transportation of wagering paraphernalia (18 U.S.C. 1953), prohibition of illegal gambling businesses (18 U.S.C. 1955), racketeer influenced

true that the letter does not specifically include 18 U.S.C. § 922(a)(1) in the list of various statutes allegedly violated. However, this omission is not fatal. We believe that the purpose of the specific enumeration was to illustrate the type of violation to be investigated and not to limit the prosecutor unduly. Moreover, the letter directed him "to conduct . . . any kind of legal proceeding . . . including grand jury proceedings . . . which United States Attorneys are authorized by law to conduct." And finally, the catch-all phrase "other criminal laws of the United States" was sufficient in this context to authorize investigation into violations of section 922(a)(1).

The principal authority appellant cites for the proposition that the indictment should be dismissed is an unpublished opinion, *United States v. O'Gorman* (E.D.N.Y.1975), which relied on our statement in *In re Persico,* 522 F.2d at 63, that "the government faces a danger when commissions are too specific and narrow." [6] For the reasons given above, we do not believe that the full import of *Persico* supports this construction of the letter of authorization in this case. Accordingly, we concur in the conclusion of Judge Weinstein below that the Strike Force attorney here had the authority to appear before the grand jury.

The conviction is affirmed.

and corrupt organizations (18 U.S.C. 1962), perjury (18 U.S.C. 1621), false declarations (18 U.S.C. 1623), mail fraud (18 U.S.C. 1341), fraud by wire (18 U.S.C. 1343), interstate transportation of stolen property (18 U.S.C. 2314), wire and radio communication (47 U.S.C. 203 and 501), internal revenue (26 U.S.C. 7201–7206), and other criminal laws of the United States and have conspired to commit all such offenses in violation of Section 371 of Title 18 of the United States Code.

You are to serve without compensation other than the compensation you are now receiving under existing appointment.

Please execute the required oath of office and forward a duplicate thereof to the Criminal Division, Department of Justice.

Sincerely,
HENRY E. PETERSEN
Assistant Attorney General

6. Memorandum opinion of Customs Court Judge James L. Watson, sitting by designation as a district judge in the Eastern District of New York, 73 Cr. 440.