**UNITED STATES**

v.

**William K. COVINGTON, 331 52 1875, Private (E–1), U. S. Marine Corps.**

**NMCM 81 0962.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 8 Oct. 1980.

Decided 19 Feb. 1982.

---

MAJ James P. Axelrod, USMC, Appellate Defense Counsel.

MAJ Charles Wm. Dorman, USMC, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BOHLEN and BYRNE, JJ.

BYRNE, Judge:

Private Covington was tried by a general court-martial and, in accordance with his pleas, was found guilty of one specification of conspiracy to commit robbery, one specification of murder while perpetrating a robbery, and two specifications of robbery, in violation of Articles 81, 118, 121 and 122, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 881, 918, 921, 922, respectively. The military judge sentenced the appellant to confinement at hard labor for life; total forfeitures; and a dishonorable discharge from the United States Marine Corps. The convening authority, in accordance with a pretrial agreement, reduced the confinement to fifty years, but otherwise approved the sentence.

There is a chronology of events leading up to appellant's pleas of guilty which warrants an initial summary.

On 11 September 1980, the convening authority referred the case to trial. He offered no special instructions. Appellant was charged, in the alternative, with premeditated murder and felony murder. Both specifications carried the possibility of a death sentence. On 18 September 1980, in the initial Article 39(a), 10 U.S.C. § 839(a) session, the trial defense counsel requested issuance of supplemental Article 34, 10 U.S.C. § 834, advice to inform the convening authority that he had an option to refer the case as noncapital. The supplemental advice was issued.

On 19 September 1980, the convening authority reaffirmed his original capital referral. The defense requested, and was granted, a continuance to brief the unconstitutionality of the death penalty under Article 118, UCMJ. On 29 September 1980, after hearing argument on the constitutional issue and his authority to decide the question, the military judge declined to rule, remarking, "I do not feel it is appropriate for a trial court to rule on such motions." (R. 40.)

Also, on that date, the defense learned that Private Covington had made certain statements "regarding his purported participation in the offenses of which he is charged. It is arguable that such statements may rise to the level of a confession." (Appellate Exhibit XVII.) On 30 September 1980, the defense requested a pretrial agreement. Under the agreement, the convening authority would agree that the *maximum punishment* he would approve would be: any amount of forfeiture or fine adjudged; any type of punitive discharge adjudged; and any confinement of 50 years or less adjudged. On 3 October 1980, the convening authority approved the agreement. Sometime between 6 and 8 October 1980, the convening authority amended the referral and directed the case be tried as "noncapital." (R. 55.)

Appellant assigns two errors for our consideration.

## I

PREJUDICIAL ERROR OCCURRED WHEN THE MILITARY JUDGE REFUSED TO RULE ON THE LAWFULNESS OF THE DEATH PENALTY THEREBY COERCING APPELLANT TO SEEK A PRETRIAL AGREEMENT TO ESCAPE THE DEATH SENTENCE WHICH RENDERED HIS SUBSEQUENT PLEAS OF GUILTY INVOLUNTARY.

In his brief, appellate defense counsel elaborates:

> The appellant submits that the abandonment by the military judge of his obligation to rule on the death penalty motion amounted to a coercive influence of such pronounced proportion that the appellant's pleas were involuntary and improvident.

### A.

### ABUSE OF DISCRETION

■ We hold that the standard to be used in determining the lawfulness of a refusal to rule on a motion is abuse of discretion. *Cf. United States v. Hart*, 407 F.2d 1087 (2d Cir. 1969), *cert. denied* 375 U.S. 916, 89 S.Ct. 1766, 23 L.Ed.2d 231 (1969). We conclude that the military judge did not abuse his discretion by refusing to rule as to the constitutionality of the death penalty.[1]

■ The military judge indicated his belief that the issue should be resolved at the appellate level rather than at the trial level. (R. 29, 38, 40.) He noted that if he ruled that Article 118 of the UCMJ, or portions thereof, were unconstitutional, his decision would lack any precedential value and would tend to create more diversity, rather than less, in the awarding of the death penalty. (R. 35.) Further, he considered a ruling premature because an appeal from his ruling by the Government could be re-

---

1. The fact that *another* military judge may have ruled to the contrary is not determinative as to whether *this* military judge abused his

discretion. *United States v. Freeman*, 15 U.S. C.M.A. 126, 35 C.M.R. 98 (1964).

jected by military appellate courts as "abstract." (R. 38.) The trial counsel noted that a trial court lacks the necessary "sophisticated sociological data" to make such a "first impression decision" upon such a complex issue. He stated that the military judge's instructions and the specific facts developed on the merits could affect the issue. (R. 39; Appellate Exhibit XIII.)

It is noted that the appellant made no representation to the military judge that he would plead not guilty to the felony murder if the judge ruled in advance that the death penalty was constitutional. *See United States v. Hart, supra,* at 1089.

The military judge did not abuse his discretion in refusing, at that juncture of the trial, to rule on the constitutionality of the death penalty.

## B.

### COERCED PRETRIAL AGREEMENT

Assuming that the military judge erred by refusing to rule on the constitutionality of the death penalty, we conclude, nevertheless, that the pretrial agreement was a voluntary act on the part of the appellant.

■■■ Voluntariness of a plea can only be determined by a review of all the relevant facts and circumstances. *Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747, 757 (1970). The benefits of the pretrial agreement to the appellant are one circumstance to be considered in determining voluntariness. *Brady v. United States, supra,* at 749, 90 S.Ct. at 1469.

■■■ The appellant achieved a number of objectives by entering into the pretrial agreement, in addition to removing the possibility of actual imposition of the death penalty. He lowered the maximum confinement that could be approved from life to fifty years and obtained the convening authority's agreement to withdraw a number of serious charges. Also, the potential

effect of testimony of a newly-discovered prosecution witness undoubtedly encouraged initiation of a pretrial agreement. (R. 87–89; Appellate Exhibit XVII.) The agreement clearly, by its terms, left no practical choice for the convening authority but to forward the case as non-capital. As a result, he enabled the appellant to request trial by military judge alone—which he did. (R. 72.)[2] *See* Article 18, UCMJ, 10 U.S.C. § 818.

■■■ If the appellant had desired to contest the constitutionality of the death penalty he could have done so *if* he had been found guilty of an offense that permitted imposition of the death penalty and *if* it had been imposed. Yet he chose to foreclose that possibility by the terms of a pretrial agreement that was advantageous to him in many other ways. He made no claim at trial that his entry into a pretrial agreement had been coerced by the military judge's decision not to rule on the constitutionality of the death penalty. *Cf. United States v. Hart, supra,* at 1089. Consequently, he made a knowledgeable choice of alternatives dictated by his own interests at that time. There was no unlawful coercion.

Our review of the record of trial warrants the conclusion that the appellant was represented by competent counsel; knew the charges against him; was not mentally incompetent; made truthful admissions of guilt; and obtained substantial benefits by pleading guilty.

■■■ Further, even if the death penalty provision of Article 118 should be held unconstitutional, the plea would not be improvident. In *Brady v. United States, supra,* at 757, 90 S.Ct. at 1473, the United States Supreme Court held:

A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly

2. The convening authority stated in his referral that Private Covington's case was "to be tried non-capital as per pre-trial agreement." Upon review, he could not approve the death penalty because the agreement and the understanding of the parties precluded approval of any punishment more severe than enumerated therein. (Appellate Exhibit XVII; R. 71.)

advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered. *See also Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

Although Private Covington's entry into a pretrial agreement may have been partially motivated by the specter of the imposition of the death penalty, we are convinced he made an intelligent and voluntary plea based upon truthful admissions and his own best interests.

## II

IN VIEW OF THE FAVORABLE EVIDENCE PRESENTED IN EXTENUATION AND MITIGATION (R. 91–98, DEFENSE EXHIBITS A–E), THE APPELLANT'S REMORSE AND ACKNOWLEDGEMENT OF WRONGDOING (R. 97–98) AND HIS PROVIDENT PLEAS OF GUILTY, AND IN VIEW OF THE FACT THAT THE COMPANION DEFENDANT [W.'s] ... APPROVED SENTENCE SUSPENDS CONFINEMENT AT HARD LABOR IN EXCESS OF 15 YEARS, THE APPELLANT'S APPROVED SENTENCE TO CONFINEMENT AT HARD LABOR FOR 50 YEARS IS INAPPROPRIATELY SEVERE AS A MATTER OF FACT. UNIFORM CODE OF MILITARY JUSTICE, ARTICLE 66(c).

Considering all the matters in aggravation, as well as in extenuation and mitigation, we conclude that the appellant's sentence, as modified by the convening authority, is very appropriate.

Evidence of a strong religious family heritage and a love and devotion for *his* family is a sharp contrast to the stark *reality* of a brutal felony murder in which the appellant struck the fatal blows as part of a crime for personal profit. The appellant left the victim, Private First Class C., in a lonely ditch to die after he inflicted massive head injuries upon him with a "stick" similar to a wooden ax handle.

Granted, fifty years confinement at hard labor is a harsh punishment, but it pales in comparison to the ultimate finality of a brutal felony murder of a fellow Marine.

We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed. Accordingly, the findings of guilty and sentence, as approved on review below, are affirmed.

Judge BOHLEN concurs.

GLADIS, Senior Judge (concurring in the result):

I join in affirming the findings and sentence, but do not subscribe to the majority rationale in its entirety. In my opinion the military judge abused his discretion by refusing to rule on the maximum punishment authorized. Primary responsibility for determining the legal limits of punishment rests upon the trial judge. *United States v. Harden,* 1 M.J. 258 (C.M.A.1976). He cannot escape this responsibility on the ground that a ruling implicates a weighty constitutional issue. In this case the military judge's refusal to rule was tantamount to a ruling that the death penalty is constitutional and the maximum sentence was the death penalty. The accused has not been prejudiced by the judge's action, however. After the accused entered into a pretrial agreement limiting the maximum sentence, the convening authority referred the case as non-capital. The accused's subsequent guilty plea was voluntary. A guilty plea is not invalid merely because it was entered to avoid the possibility of the death penalty. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 760 (1970). *See also United States v. Hedlund,* 7 M.J. 271 (C.M.A.1979) (a guilty plea entered after the accused unsuccessfully litigates a legal issue having an impact on the maximum sentence is provident).

I join the majority in concluding that the sentence approved below is appropriate.