**Anthony SOLDANO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 75 Cr. 687.**

United States District Court, S.D. New York.

May 12, 1983.

Anthony Soldano, pro se.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for respondent; Kenneth A. Caruso, Asst. U.S. Atty., New York City, of counsel.

OPINION

IRVING BEN COOPER, District Judge.

Petitioner Soldano moves, pursuant to 28 U.S.C. § 2255, to vacate and correct the sentence of fifteen (15) years we imposed upon him on December 3, 1975. In that year, Soldano and others were tried on a seventeen-count indictment charging violations of the federal narcotics law. A jury convicted Soldano on the first count (which

charged conspiracy, in violation of 21 U.S.C. § 846) and the ninth count (which charged distribution and possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2). Each of those violations carried a maximum sentence of imprisonment of 15 years and a $25,000 fine. The conviction was affirmed, 543 F.2d 431 (2d Cir.1976), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977).

When Soldano and his co-defendants appeared for sentence, we observed:

> These defendants were found guilty of conspiracy to distribute heroin and with the actual distribution and possession with intent to distribute vast amounts of heroin, both pure and diluted. The proof established that from in or about late February, 1973, to approximately the end of February, 1974, Perna, Malizia and Verzino were engaged in criminal partnership to obtain massive quantities of pure and diluted heroin, and to resell this heroin to other members of the conspiracy. The defendants, Magnano, Pallatta, Bolella, DeLutro and Soldano were the sources of the heroin supplied to Perna, Malizia and Verzino.

> \*     \*     \*     \*     \*     \*

> The convicted defendants were part of a tremendous network in this metropolitan area. Indeed, so far as our personal observations are concerned, this case is one of the largest domestic heroin cases in the history of narcotics law enforcement. The prosecution of Magnano, Pallatta, DeLutro, Soldano and Lucas was the culmination of literally thousands of hours of intensive investigation by representatives of the United States Drug Enforcement Administration over a very . . . substantial period of time.

> \*     \*     \*     \*     \*     \*

> We have presided over trials involving the sale of substantial quantities of narcotics. Never, however, on a scale as extraordinary as this with its enormous quantities of heroin bought and sold on an almost daily basis. The activities of this group emphasizes the overlords and regimental tiers of operation, all governed by tight maneuvers and bold enough to successfully avoid governmental detection of which they were constantly apprehensive and aware. Nor have the important operational details of their cruel enterprise come to light even at this late date. Let's face it[:] so inhuman, ruthless and cold-blooded was their approach to the execution of their nefarious schemes that we sat aghast at the unfolding of the enormity of their horrifying indifference to life's [true] values. The holocaust of misery, the dreadful terminus of life for legions following the vast narcotic operations revealed herein [are] too horrifying even to contemplate.

> \*     \*     \*     \*     \*     \*

The instant application is not the first time we have heard from petitioner since we imposed sentence. In 1977 he moved for a reduction of the sentence which we were constrained to deny. The essence of the grounds then advanced by defendant (affidavits of his wife and attorney) was the hardship which had befallen his family following his incarceration. We pointed out that throughout decades of judicial service, we have painfully and repeatedly witnessed the unceasing misery and the cruel hardship visited upon the family of a defendant sentenced to a substantial period of imprisonment. We are fully aware of the harsh fact that almost invariably it is the family that suffers much more than the sentenced felon. We make as much allowance for so throbbing a factor as is reasonable, always bearing in mind that justice must be done to defendant and accuser (community) alike. And so we did in this case at the time this defendant came on for sentence. It must be obvious that each human being tempted to commit crime has a choice to make: whether to succumb and possibly endanger (often beyond recall) one's family or resist and avoid disaster to the family. We venture to suggest that most adopt the latter course. And what of the victims of the narcotics traffic rendered helpless physically and mentally by their

indulgence? Most of them have families, too—families stricken and bereaved by the holocaust, the irreparable damage which has befallen them and the community. Are they not entitled to our consideration as well?[1]

\* \* \* \* \* \*

At sentence, we emphasized:

And so we do address ourselves to the strength and weakness of each defendant. And the sentence is addressed not only to the crimes of which they stand convicted, but to their behaviour pattern as human beings over a substantial period of time.

At sentence, counsel for the Government stated: "Soldano ... operated as a supplier of heroin ... Soldano sold six pounds of pure heroin in January 1974 for approximately $150,000 in cash. [He has] a prior narcotics conviction ... [and is] associated with major crime figures in New York City." In denying petitioner's motion for reduction of sentence (referred to hereinabove) we noted that the Government's comment was "factually supported."

In addressing Soldano at sentence, we outlined his prior criminal record and then commented:

What is the only outstanding thing I can grab [on] for Soldano? He served in the United States Army from 4/3/43 to 11/19/45, honourably discharged. He served overseas in the European Theatre of operations. I will give him credit for that. Soldano is a prior narcotics offender. Soldano sold Verzino, Malizia and Perna six pounds of heroin in January, 1974, for approximately $150,000 in cash. The report mentions his association with notorious criminal characters. I have not given that any consideration, because of unsupported proof. If it weren't for his military record I would add five more years to the sentence. I have lopped off five. Here each count carries with it a maximum of fifteen years and $25,000

fine. I am going to impose the following sentence—and I do impose it—fifteen years on count 1, fifteen years on count 9, to run concurrently, a total of fifteen years.

At the time of sentence, it was within our power to impose a maximum of fifteen years and a $25,000 fine on *each* of the two counts of which the jury found Soldano guilty—a total of thirty (30) years and a $50,000 fine. Making allowance for his military service, we concluded that the interests of both the defendant and the community would best be served by imposing a *total* sentence of twenty (20) years less five (5) years for his military service; hence the fifteen (15) years sentence actually pronounced and imposed: "If it weren't for his military record I would add five more years to the sentence. I *have* lopped off five [emphasis ours] ... I am going to impose the following sentence ... fifteen years on count 1, fifteen years on count 9, to run concurrently, a total of fifteen years." (Sentencing minutes, p. 68).

Petitioner possibly labors under the mistaken belief that by imposing the maximum prison sentence of fifteen (15) years (the maximum on each of the two counts), we failed to subtract five (5) years (in recognition of his military service). If that is his reasoning, he is unmindful that we were empowered under law to impose a total prison sentence of thirty (30) years plus a total fine of $50,000—fifteen (15) years and $25,000 on each of the two counts (2 and 9) to run consecutively and not concurrently; that if we had not decided to give him consideration for military service (certainly we were not bound to do so, it being solely within our discretion), we would have imposed a sentence of twenty (20) years imprisonment—ten (10) years on count 2 and ten years on count 9, to run consecutively and not concurrently.

We regard directly pertinent indeed at this point the observation of our Circuit

---

1. We were compelled to brush aside his counsel's plea. Without assigning any reason therefor, he advanced the opinion, "Whatever the value of punishment and deterrences to society, it is respectfully submitted that no purpose would be served in holding the defendant to his original term...."

Court (*United States v. George Ochs,* 595 F.2d 1247, 1262 (2d Cir.1979):

> ... On the undisputed record disclosed in the pre-sentence report, the judge could reasonably have given Ochs an even higher total sentence than he did. Particularly in light of our disposition of the suppression claim, we are not concerned with how the sentence was structured.

Under the law applicable to the instant petition to vacate and correct the sentence imposed, we are constrained to, and do, deny the petition in all respects.

SO ORDERED.